UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

LUIS F. CRUZ-ACEVEDO, et al.,

    Plaintiffs,

    v.

PEDRO TOLEDO-DÁVILA, et al.,

    Defendants.

Civil No. 07-2104 (JAF)

**OPINION AND ORDER**

Plaintiffs, Luis F. Cruz-Acevedo and Manuela V. Cruz-Perocier, bring this action under 42 U.S.C. § 1983 and Puerto Rico law against Defendants, Pedro Toledo-Dávila ("Toledo"), José Dennis-Tavarez ("Dennis"), William Orozco-Sánchez ("Orozco"), William Ruiz-Borrás ("Ruiz"), Edwin Rosado-Morales ("Rosado"), Jorge González-Pérez ("González"), Ángel Pérez-Rodríguez ("Pérez"), Miguel Arocho-Irizarry ("Arocho"), Rubén Colón-Pérez ("Colón"), José Nieves-Soler ("Nieves"), and three unknown defendants. (Docket No. 70.) Plaintiffs accuse Defendants of obtaining a fraudulent search warrant and arresting Cruz-Acevedo without probable cause in violation of the Fourth Amendment, extortion in violation of the Fourteenth Amendment, and violations of Puerto Rico law. (<u>Id.</u>) Toledo, Rosado, Orozco, Dennis, Ruiz, and González ("Movants") move for summary judgment under Federal Rule of Civil Procedure 56(c) (Docket No. 89) and Plaintiffs oppose (Docket No. 100).

Civil No. 07-2104 (JAF) -2-

**I.**

**Factual and Procedural Synopsis**

We derive the following facts from the parties' motions, statements of uncontested material facts, and exhibits.[1] (Docket Nos. 88, 89, 98, 99, 100, 105.)

Cruz-Acevedo is a schoolteacher who has worked for the Puerto Rico Department of Education for eleven or twelve years. (Docket Nos. 99-2, 105-2.) Cruz-Perocier is his daughter. (Id.)

Toledo is the superintendent of the Puerto Rico Police Department ("PRPD"). Dennis has been the auxiliary superintendent of the PRPD Drugs, Narcotics, Vice Control, and Illegal Firearms Bureau ("PRPD Narcotics, Vice, and Firearms") since January 20, 2007. (Docket Nos. 88-8, 98-8.) Orozco has been the director of PRPD Narcotics, Vice, and Firearms since January 20, 2007. (Docket Nos. 88-5, 98-5.) Ruiz is the director of the PRPD Illegal Firearms Bureau. Rosado has been the PRPD commandant of the Aguadilla region since August 1, 2007. (Docket Nos. 88-4, 98-4.) González is the director of the PRPD Aguadilla Illegal Firearms Division; Pérez, Arocho, Colón, and Nieves are his subordinates.

On November 21, 2006, Plaintiff Cruz-Acevedo was at home when Arocho, Colón, and Nieves appeared at his house in Aguadilla.

---

[1] To the extent that each party has failed to address the other's proffered facts, we regard these facts as admitted. See L.Cv.R. 56(e).

(Docket Nos. 99-2, 105-2.) These PRPD officers had a search warrant that authorized them to search Cruz-Acevedo's premises. (Id.)

A magistrate had issued the search warrant upon the sworn affidavit testimony of Nieves on November 16, 2006. (Docket Nos. 88-2, 98-2.) In the affidavit, Nieves asserted that an informant had accused a man around the age of fifty, residing at Cruz-Acevedo's house, of weapons possession and drug sales to youths in Aguadilla. (Id.) The affidavit stated that Nieves had conducted surveillance of the house and observed Cruz-Acevedo engage in a drug transaction involving marijuana. (Id.) The affidavit requested a search of the premises to seize firearms and marijuana. (Id.) The PRPD Illegal Firearms Division of Aguadilla conducted the search, and González and Pérez were the supervisors. (Docket Nos. 88-3, 98-3.) Pérez authorized the search and certified that the investigative file on Cruz-Acevedo complied with PRPD policy. (Id.)

After entering the house, Arocho, Colón, and Nieves informed Cruz-Acevedo that they knew that he had filed an administrative complaint against Víctor Cortés, a PRPD officer from Mayagüez, alleging an earlier illegal search of Cruz-Acevedo's house. (Docket Nos. 99-2, 105-2.) They warned Cruz-Acevedo that Cortés was well connected. (Id.) Pérez entered the house after PRPD officers had served the search warrant on Cruz-Acevedo. (Docket Nos. 99-5, 105-5.) González entered Cruz-Acevedo's house after the search had begun. (Docket Nos. 88-24, 88-25, 98-24, 98-25.)

The PRPD officers searched the house for some time without finding drugs or firearms. (Docket Nos. 99-2, 105-2.) Then, Cruz-Perocier arrived at the house and PRPD officers denied her entry. (Id.) The officers threatened to arrest Cruz-Perocier if she tried to enter but made no physical contact with her. (Id.) Cruz-Acevedo left his bedroom and went to the door to calm his daughter. (Id.)

While Cruz-Acevedo was speaking to Cruz-Perocier, Nieves announced that he had found a box containing bullets inside the bedroom. (Id.) Cruz-Acevedo recognized the box as one that formerly contained checkbooks and vehemently denied that the bullets inside were his. (Id.) Arocho then searched the house again and removed a red bag from Cruz-Acevedo's dresser drawer. (Id.) Arocho opened the bag and asserted that it contained marijuana. (Id.) The PRPD officers then placed Cruz-Acevedo under arrest. (Id.)

On the way to the police station, Arocho suggested that Cruz-Acevedo give him information on other, wealthier people to accuse of crimes in exchange for ending the investigation. (Docket Nos. 99-2, 105-2.) At the station, a technician sampled the contents of the red bag and found no marijuana. (Id.) Arocho again asked Cruz-Acevedo for information on wealthy persons who violate the law. (Id.)

After the PRPD released Cruz-Acevedo, Nieves summoned Cruz-Acevedo by telephone and they met near a park. (Id.) Nieves informed Cruz-Acevedo that he, Arocho, and Colón had a reputation in the Aguadilla area for being corrupt. (Id.) Nieves then tried to persuade

Cruz-Acevedo to agree not to file charges against Arocho, Colón, and Nieves, in exchange for information on the person responsible for fabricating the criminal investigation against Cruz-Acevedo. (Id.) After several meetings that day with Arocho, Colón, and Nieves, Cruz-Acevedo signed an agreement. (Id.)

On November 20, 2007, Plaintiffs filed this case in federal court. (Docket No. 1.) On December 8, 2008, we dismissed all claims except for Cruz-Acevedo's claim for substantive due process and his claims under Puerto Rico law. (Docket No. 62.) On February 26, 2009, we granted partial reconsideration, reinstating Cruz-Acevedo's Fourth Amendment claim for arrest without probable cause, and granting him leave to amend his complaint as to a potential claim for a fraudulently-obtained search warrant. (Docket No. 69.) Plaintiffs filed an amended complaint on March 12, 2009. (Docket No. 70.) Movants moved for summary judgment on May 15, 2009 (Docket No. 89) and Plaintiffs opposed on June 15, 2009 (Docket No. 100).

## II.

### Summary Judgment under Rule 56(c)

We grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of

the case. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

The movant carries the burden of establishing that there is no genuine issue as to any material fact; however, the burden "may be discharged by showing that there is an absence of evidence to support the non-movant's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 331 (1986). The burden has two components: (1) an initial burden of production, which shifts to the non-movant if satisfied by the movant; and (2) an ultimate burden of persuasion, which always remains on the movant. Id. at 331.

In evaluating a motion for summary judgment, we view the record in the light most favorable to the non-movant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). However, the non-movant "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Sometimes, we may grant summary judgment sua sponte, provided that discovery has sufficiently progressed for the court to determine relevant facts and the target has at least ten days' notice to contest the impending judgment. Stella v. Town of Tewksbury, 4 F.3d 53, 55-56 (1st Cir. 1993).

### III.

### Analysis

Movants argue for summary judgment on the basis of Plaintiffs' failure to state claims under the First, Fourth, Fifth, Tenth, and

Fourteenth Amendments and inability to establish supervisory liability. (Docket No. 89.) We address, in turn, our prior dismissal of baseless claims, supervisory liability as to Toledo, Orozco, Ruiz, Dennis, and Rosado ("the Supervisors"), and claims against González.

**A.    First, Fifth, and Tenth Amendments and Cruz-Perocier**

We previously dismissed as baseless Plaintiffs' claims under the First, Fifth, and Tenth Amendments, claims against unknown defendants, and claims asserted by Plaintiff Cruz-Perocier. (See Docket No. 62.) With the exception of averments relating to the allegedly-fraudulent search warrant affidavit, Plaintiffs' amended complaint essentially reiterates their original complaint without new factual allegations. (See Docket No. 1; Docket No. 70 at ¶¶ 3.11-.16.) We see no reason to rehash this dismissal of claims other than those under the Fourth and Fourteenth Amendments. (See Docket Nos. 62, 69.) We granted Plaintiffs leave to amend their complaint to better explicate their causes of action under the Fourth Amendment in good faith, not to resurrect other baseless claims. (See Docket No. 69.) As Plaintiffs' amended complaint supplies no new averments to support these previously-dismissed claims, we apply our previous reasoning to dismiss them once again, sua sponte. (See id.)

We next consider Cruz-Acevedo's remaining Fourth Amendment claims for execution of a fraudulently-obtained search warrant and arrest without probable cause on the basis of planted evidence, and his claim for substantive due process. (See Docket No. 70.)

**B.  Supervisory Liability**

Plaintiffs' amended complaint charges the Supervisors under three separate theories of supervisory liability for their alleged failure to control González, Pérez, Nieves, Arocho, and Colón. (Docket No. 70.) Plaintiffs accuse the Supervisors of failure to adequately train these subordinates, wilful blindness towards a pattern of misconduct by their offending subordinates, and failure to discipline these subordinates for misconduct prior to the search in this case. (Id.) Movants contend that Plaintiffs cannot establish supervisory liability because (1) several Movants had not been appointed to their positions at the time of the allegedly illegal search, (2) Movants had promulgated policies relating to proper police conduct in searches and seizures, and (3) the subordinate officers had no record of civil rights abuses. (Docket No. 89.)

To establish supervisory liability under § 1983, a plaintiff must demonstrate the supervisor's fault for his own acts or omissions. Whitfield v. Meléndez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005). Accordingly, a plaintiff must establish either (1) the supervisor's direct participation in a constitutional violation, or (2) conduct by the supervisor that is tantamount to tacit authorization of illegal conduct. Id. (citing Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999)). Under the latter approach, a plaintiff must show that (a) the conduct of the supervisor's subordinate caused a constitutional violation, and (b) the

supervisor's acts or omissions were affirmatively linked to the subordinate's conduct such that the supervisor's conduct constituted "'supervisory encouragement, condonation or acquiescence,' or 'gross negligence amounting to deliberate indifference.'" Id. (quoting Hegarty v. Somerset County, 53 F.3d 1367, 1379-80 (1st Cir. 1995)) (ellipsis omitted).

A supervisor's failure to adequately train or to discipline errant subordinates can be grounds for supervisory liability. See id. at 9-10, 13, 14. The supervisor's omission "must amount[] to deliberate indifference to the rights of persons with whom the police come into contact." Id. at 10 (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). "The plaintiff must establish that the particular officers who committed the violation had been deprived of adequate training, and that this specific failure in training was at least a partial cause of the ultimate injury." Id. (citing Young v. City of Providence, 404 F.3d 4, 26 (1st Cir. 2005). A supervisor's promulgation of policy relating to proper police procedure precludes his liability for inadequate training. Id. at 10-11.

In a case for failure to discipline, the omission "must be 'so well settled and widespread that the [defendants] can be said to have either actual or constructive knowledge of it yet did nothing to end the practice.'" Id. at 13 (quoting Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989)). This pattern of neglect "must have been

Civil No. 07-2104 (JAF)                                              -10-

the cause of and 'the moving force behind' the constitutional violation." Id. (quoting Bordanaro, 871 F.2d at 1157).

As an initial matter, the facts preclude all claims against Dennis, Orozco, or Rosado. These officials were all appointed to their respective positions months after the alleged violations in this case. (See Docket Nos. 88-4, 88-5, 88-8, 98-4, 98-5, 98-8.) They cannot be liable as supervisors. See Whitfield, 431 F.3d at 14.

With respect to claims against Toledo and Ruiz, Toledo promulgated General Order 98-16 on October 16, 1998, which specifically addressed the appropriate procedures for obtaining a search warrant.[2] (Docket Nos. 88-28, 98-28.) Ruiz conducted a meeting on August 16, 2006, in which he discussed compliance with General Order 98-16, and which González and others attended. (Docket Nos. 88-10, 88-11, 98-10, 98-11.) As Toledo disseminated policy on correct police procedure, and Ruiz conducted a seminar to instruct his subordinates on the policy, Toledo and Ruiz did not deliberately fail to train the offending officers. See Whitfield, 431 F.3d at 10. Furthermore, the administrative record for Pérez, Nieves, Arocho, and Colón does not show a pattern of corruption, falsification of testimony, or false arrest at the time of the search against Cruz-Acevedo. (See Docket Nos. 88-29, 88-30, 88-31, 88-32, 98-29, 98-30, 98-31, 98-32.) There was a single charge of false arrest lodged

---

[2] We are perplexed as to how Plaintiffs' counsel could erroneously argue that General Order 98-16, issued in 1998, postdated the alleged misconduct in 2006 by two years. (See Docket Nos. 99, 100.)

against Arocho in 2005. (Docket Nos. 88-31, 98-31.) Although Nieves informed Cruz-Acevedo that he, Arocho, and Colón had a reputation for corruption in Aguadilla (Docket Nos. 99-2, 105-2), Toledo and Ruiz operated at the most general level of supervision on an island-wide basis and could not have overseen personnel matters on a local level in Aguadilla. If Toledo and Ruiz could not have had personal knowledge of Pérez', Nieves', Arocho's, and Colón's records, they also cannot be responsible for disciplining these officers for any prior instances of corruption or false arrest. Therefore, Toledo and Ruiz were not deliberately blind to misconduct at the level of the PRPD regional command for Aguadilla. See Whitfield, 431 F.3d at 14.

As noted below, we find no basis for the allegation that González participated in the fraudulent procurement of a search warrant. See infra part III-C. Similarly, we find no basis to hold González liable as a supervisor for the search and arrest, see infra part III-C, and hence Toledo and Ruiz cannot be held responsible for González' participation in the alleged abuses. See Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1171-72 (1st Cir. 1995). Even if Plaintiffs can show that González facilitated the fraud on the magistrate, or that he failed to supervise the culpable officers, Plaintiffs have adduced no evidence that Toledo and Ruiz assisted or were deliberately blind to such abuses. Therefore, Toledo and Ruiz did not fail to supervise González as a matter of law. See Whitfield, 431 F.3d at 14.

**C.    Defendant González**

In their amended complaint, Plaintiffs' sole allegation against González is that he "unlawfully cooperat[ed]" in Nieves' fraudulent procurement of a search warrant (Docket No. 70 at ¶ 3.17). The record is devoid of evidence that González participated in this Fourth Amendment violation. His name does not appear on the warrant affidavit signed by Nieves. (Docket Nos. 88-2, 98-2.) Pérez, not González, authorized the search. (Docket Nos. 88-3, 98-3.)

Although González was present during the search of Cruz-Acevedo's house (Docket Nos. 88-24, 88-25, 98-24, 98-25), the amended complaint does not charge him with involvement in the search, arrest, and extortion, or with failure to supervise. (See Docket Nos. 70, 100.) Instead, Plaintiffs accuse González of supervisory liability in the warrantless arrest of Cruz-Acevedo for the first time in their opposition to summary judgment. (See Docket No. 100.)

Generally, courts cannot entertain claims on summary judgment which never appeared in the complaint. Ruíz-Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 84 (1st Cir. 2008). "The fundamental purpose of our pleadings rules is to protect a defendant's 'inalienable right to know in advance the nature of the cause of action being asserted against him.'" Id. (quoting Doral, 57 F.3d at 1171) (affirming summary judgment where claim was not sufficiently pleaded in amended complaint). Even under the notice pleading standard, plaintiffs may not "leave defendants to forage in forests of facts, searching at

Civil No. 07-2104 (JAF)                                                   -13-

their peril for every legal theory that a court may some day find lurking in the penumbra of the record." Doral, 57 F.3d at 1172.

However, litigants may constructively amend pleadings by implied consent under Federal Rule of Civil Procedure 15(b) in either of two ways. Id. First, a new "claim may be actually introduced outside the complaint . . . and then treated by the opposing party as having been pleaded, either through his effective engagement of the claim or through his silent acquiescence." Id. Alternatively, "and more conventionally, 'consent to the trial of an issue may be implied if, during the trial, a party acquiesces in the introduction of evidence which is relevant only to that issue.'" Id. (quoting DCPB, Inc. v. City of Lebanon, 957 F.2d 913, 917 (1st Cir. 1992)). However, if it would be futile for a plaintiff to constructively amend his complaint, we need not consider his proffered amendment for the purpose of summary judgment. Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001).

In the case at bar, we granted Plaintiffs leave to amend their complaint after the close of discovery. (Docket Nos. 61, 69.) Plaintiffs, thus, had ample opportunity to include any new claims against González but failed to do so.[3] (Compare Docket Nos. 1, 70.)

---

[3] As we have repeatedly warned Plaintiffs' counsel, the generous pleading standard of Federal Rule of Civil Procedure 8 does not relieve him of the duty to represent his clients with competence and diligence. (Docket No. 62 nn.1 & 3; Docket No. 69 n.3.) Counsel's neglect is particularly egregious in light of our leave for Plaintiffs to amend their complaint. (See Docket No. 69.)

Nevertheless, Movants have erroneously treated González as a supervisory defendant in their motion for summary judgment. (See Docket No. 89.) In opposition, Plaintiffs traverse the issue by asserting their new claim against González for his alleged role as a supervisor at the search of Cruz-Acevedo's house. (Docket No. 100.) Therefore, Movants have unwittingly introduced the question of González's supervisory role at the search and arrest, creating colorable grounds to constructively reform the pleadings to reflect this new claim. Cf. Doral, 57 F.3d at 1172-73 (finding no constructive amendment and vacating judgment).

In their opposition brief, Plaintiffs allege that "González was also present during the preparation meeting prior to executing the search and seizure," and "González was inside the house" when Nieves and Arocho found the evidence. (Docket No. 100.) From these facts, Plaintiffs insist that "González acquiesced to plaintiff's violation [sic] of constitutional rights." (Id.) By referring to González' acquiescence rather than active involvement, Plaintiffs attempt to state a claim for González' supervisory liability by tacit authorization, rather than direct participation. See Whitfield, 431 F.3d at 14.

To establish a claim for supervisory liability on the basis of tacit authorization, a plaintiff must show that "it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." Maldonado v.

Civil No. 07-2104 (JAF)                                              -15-

Fontanes, 568 F.3d 263, 275 (1st Cir. 2009) (quoting Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008)) (internal quotation marks omitted). "[M]ere presence at" the scene of an alleged violation "is insufficient to create the affirmative link necessary for a finding of supervisory liability, even under a theory of deliberate indifference." Id. (holding that allegation of presence is insufficient to survive dismissal).

At this late juncture, Plaintiffs' sole basis for their proffered new claim is González' own version of facts submitted by Movants in support of their motion for summary judgment.[4] (See Docket No. 100.) González states that, although he was on Cruz-Acevedo's premises, he did not observe Arocho and Nieves uncover the allegedly planted evidence. (Docket Nos. 88-25, 98-25.) Moreover, González' deposition testimony is entirely devoid of admission of knowledge of his subordinates' misdeeds. (See Docket Nos. 88-14, 88-15, 88-16, 88-17, 88-20, 88-21, 88-22, 88-23, 88-24, 88-25, 88-26, 98-14, 98-15, 98-16, 98-17, 98-20, 98-21, 98-22, 98-23, 98-24, 98-25, 98-26.)

Without more evidence than González' mere presence at the planning and execution of the search against Cruz-Acevedo, Plaintiffs cannot establish the necessary causal link to prevail on their new claim against González. See Maldonado, 568 F.3d at 275. Consequently, it would be futile for Plaintiffs to constructively

---

[4] Plaintiffs also point to their own sworn statement which they never submitted. (Docket No. 100.) We cannot accept arguments on summary judgment that are unsupported by evidence. See L.Cv.R. 56(e).

amend their complaint to charge González with supervisory liability, and we need not consider this claim for the purpose of summary judgment. See Hatch, 274 F.3d at 19.

We, therefore, order Plaintiffs to show cause as to why we should not order summary judgment, sua sponte, in favor of González on all claims. As we treat all federal claims against Movants on other grounds, we need not address their arguments for sovereign or official immunity. (See Docket No. 89.)

## IV.

## Conclusion

Accordingly, we hereby **GRANT IN PART** Movants' motion for summary judgment (Docket No. 89):

We **DISMISS**, sua sponte, Plaintiffs' § 1983 claims under the First, Fifth, and Tenth Amendments, all claims against unknown defendants, and all claims by Cruz-Perocier **WITH PREJUDICE** (Docket No. 70). We **DISMISS** all federal claims against Toledo, Rosado, Orozco, Dennis, and Ruiz **WITH PREJUDICE** (id.). We **ORDER** Cruz-Acevedo to **SHOW CAUSE, on or before July 31, 2009,** as to why we should not also grant summary judgment, sua sponte, in favor of González.

We **RETAIN** jurisdiction over Cruz-Acevedo's Fourth Amendment claims for execution of a fraudulently-obtained search warrant and arrest without probable cause, and Fourteenth Amendment claim for substantive due process, against Arocho, Colón, Nieves, and Pérez, as

well as his claims under Puerto Rico law against Arocho, Colón, Nieves, Pérez, the Supervisors, and González (id.).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 15th day of July, 2009.

                                                 S/José Antonio Fusté
                                                 JOSE ANTONIO FUSTE
                                                 Chief U.S. District Judge